IN THE CIRCUIT COURT FOR CARTER COUNTY,

AT ELIZABETHTON, TENNESSEE

BROWN OSBORNE AND
JENNIFER OSBORNE,
*Plaintiffs*

VS. CIVIL ACTION NO. [illegible]

TERRY WHITEHEAD CONSTRUCTION, L.L.C.

And

STATE FARM INSURANCE,
*Defendants*

COMPLAINT

Come now the Plaintiffs and for their cause of action would show unto this Honorable Court the following:

COUNT ONE
(TERRY WHITEHEAD)

1. Plaintiffs are citizens and residents of Moravian Falls, North Carolina, and have a mailing address of 792 E. Meadows Road, Moravian Falls, NC 28654.

2. Terry Whitehead Construction, L.L.C. (Whitehead), is a Tennessee limited liability company, having a registered agent of Terry L. Whitehead and a business address of 236 Price Road, Elizabethton, TN 37643.

3. Plaintiffs own a parcel of real property and improvements situate thereon at 327 Old Steele Bridge Road, Elizabethton, Carter County, Tennessee (see Exhibit "A" attached hereto for the Warranty Deed to same).

4. On or about June 19, 2011, the Plaintiffs' home situate on the above real property was damaged by fire. Thereafter, Plaintiffs had several meetings with Whitehead about

Complaint exhibit 20 Feb 14 John Paul Mathes

rebuilding, repairing and replacing the damage to the improvements caused by the fire. The Plaintiffs argued that the repairs could not be accomplished as Whitehead and the insurer had assured the Plaintiffs it could. Plaintiffs wanted a complete rebuild.

5. On or about August 18, 2011, and based upon Whitehead's and insurer's assurances, Plaintiffs and Whitehead entered into a Contract to perform the repair work (See Exhibit "B" attached for a copy of said Contract).

6. The repair work has not been completed, or if considered completed, the repairs are defective. On December 24, 2012, Whitehead, thru its agent, advised Plaintiffs by phone it would see them in Court.

7. On the date of the Contract, Whitehead was working and doing business as a Tennessee limited liability company, however, before the Contract work was completed (It is yet to be completed) and on or about August 9, 2012, the Terry Whitehead Construction Company, LLC, was administratively dissolved.

8. On or about August 29, 2012, Foresight Home Inspection, Inc., performed a home inspection and found many deficiencies, including, but not limited to, the following: earth to wood contact, poor drainage, improperly installed and/or missing hand rails, improperly installed dormers in crawlspace, broken and sagging framing, trash and debris left in crawlspace, poor end bearing, sagging and cracking floor joists, floor joists not contacting sub floor, no vapor barrier installed, untreated wood installed which attracted insects, no roof rafter vents and minimal ventilation to attic area, no insulation between floor joists, insulation installed unevenly, roof cover installed without a drip edge, improper routing of downspouts, erosion in electrical panel, unlabeled electrical panels, missing or damaged electrical plate covers, damaged or missing HVAC registers,

plumbing has excessive corrosion near main valve, leaking plumbing, lack of a proper pressure relief valve drain line, reversed hot and cold water lines, loose toilet tank, active moisture in ceilings is already staining, lack of caulking in showers and tubs, active water leaks, uneven floors, erosion of plumbing and no dishwasher trap.

9. On or about July 17, 2013, PROSIM Engineering, LLC performed a home inspection and found many deficiencies, including, but not limited to, the following: omitted vapor barrier beneath floor causing floors to cup and become uneven, debris in crawl space, no insulation beneath ground floor (code violation) adding to floor cupping, need for supplemental framing, improper and lack of floor sheathing, improperly installed (or failure to replace sill plates, floor joists with improper cap plates, structurally inadequate framing under floors, foundation wall crack, improperly seated floor joists, improper or lack of supports for masonry walls, improper support for framing and undersized girder causing floor sag

10. Whitehead's work was not performed in a workmanlike manner according to standard practices.

11. Whitehead was negligent in the performance of its work.

12. Whitehead's work was not performed per Code

13. Whitehead breached its Contract with Plaintiffs

14. Whitehead's actions were such that they rise to a violation of the Tennessee Consumer Protection Act.

15. Plaintiffs have, are and will continue to suffer damages as a direct result of Whitehead's failure to perform work in a workmanlike manner, breach of warranty, negligence, failure to perform work to Code requirements and breach of Contract.

16. The work to correct Whitehead's work is ongoing and the full damages are not yet determinable.

17. Whitehead is liable for gross negligence for its willful and wanton conduct under the terms of the Contract.

18. Whitehead's actions have caused both negligent infliction of emotional distress and intentional infliction of emotional distress upon the Plaintiffs.

**COUNT TWO**
**(STATE FARM INSURANCE)**

19. All averments and statements of fact listed above are hereby re-alleged as to defendant, State Farm Insurance (State Farm).

20. State Farm may be served with process at it's principle office located at One State Farm Plaza, Bloomington, IL 61710.

21. State Farm was sent an official notice for bad faith refusal to pay on or about November 20, 2013. (See Exhibit "C" attached hereto as the notice sent to State Farm for bad faith refusal to pay an insurance contract.)

22. State Farm responded to the bad faith notice letter on December 9, 2013. (See Exhibit "D" attached hereto as the response to bad faith from State Farm.)

23. Plaintiffs stated to State Farm representatives on multiple occasions that they wanted the house rebuilt and not repaired. To date as listed above there are many structural deficiencies to the house.

24. Plaintiffs stated to State Farm representatives on multiple occasions that various pieces of personal items, furniture, and fixtures throughout the house have not been replaced even though the Plaintiffs have requested replacement. Furthermore, various pieces of

personal items, furniture, and fixtures have been replaced at the Plaintiffs' expense but State Farm has not reimbursed the Plaintiffs for the expenditures.

25. State Farm's actions have breached the terms of the insurance contract with the Plaintiffs.

26. State Farm is liable for bad faith refusal to pay pursuant to the terms of the insurance contract in violation of T.C.A. § 56-7-105.

27. State Farm is liable for fraud based on the willful and wanton actions of the insurance company and its respective agents and representatives.

28. State Farm is liable for violation of the Tennessee Consumer Protection Act based on its willful, wanton, and fraudulent behavior.

29. State Farm is liable for negligence for its failure to rebuild the property and pay outstanding claims.

30. State Farm is liable for negligence per se for its insistence on repairing instead of rebuilding the residence, which has caused the residence to have various structural deficiencies and violations of state and local building codes.

31. State Farm is liable for gross negligence for its willful and wanton conduct and non-payment of valid claims under the terms of the insurance contract.

32. State Farm is liable for conversion for the willful non-payment of legitimate insurance claims.

33. State Farm's actions have caused both negligent infliction of emotional distress and intentional infliction of emotional distress upon the Plaintiffs.

**WHEREFORE,** Plaintiff's demands are as follows:

1. That process issue and be served upon the Defendants

2. That upon a hearing in this cause Plaintiffs be awarded a judgment against Whitehead and State Farm in the amount to be determined at trial.

3. That pursuant to the provisions of the Tennessee Consumer Protection Act, the judgment of Plaintiffs' be trebled and Plaintiff be awarded their reasonable attorney fees and any and all costs of this cause.

4. That pursuant to State Farm's bad faith refusal to pay that the standard statutory penalty be awarded to the Plaintiffs.

5. That the Plaintiffs be awarded punitive damages for the willful and wanton behavior of the Defendants.

6. That the Plaintiffs be awarded any and all reasonable and just relief the Court deems necessary for the cause of justice.

7. That a jury be impaneled to try this cause of action.

**BROWN OSBORNE AND JENNIFER OSBORNE**

By: ______________________

Randy Kennedy, BPR No.006674
Attorney at Law
625 Anderson Street
Bristol, Tennessee 37620
Telephone: (423) 764-7162
Fax: (423) 764-8676
Email: [illegible]

And

By: ______________________

Jonathan E. Roberts, BPR No. 026557
Wohlford and Roberts
906 Anderson Street
Bristol, Tennessee 37620
Telephone: 423-968-7081

Fax: 800-591-1480
Email: jonathanroberts@jerlaw.com

**BOND**

We acknowledge ourselves sureties in this cause in an amount not to exceed $500.00.

Randy M. Kennedy

Jonathan E. Roberts

EXHIBIT
A

This Instrument Prepared by
[illegible]
[illegible]
P. O. Box [illegible]
Erwin, TN 37650
[illegible]

# WARRANTY DEED

THIS DEED made and entered into on this the 6th day of September 2000, by and between PATRICK TAYLOR GODDARD and wife, KATHY McCURRY GODDARD, hereinafter referred to as "first parties", and BROWN OSBORNE and wife, JENNIFER OSBORNE, hereinafter referred to as "second parties";

## WITNESSETH,

That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, receipt of which is hereby acknowledged, first parties have bargained and sold and do, by these presents, transfer and convey unto the second parties, their heirs and assigns, a certain tract or parcel of land located in the Ninth Civil District of Carter County, Tennessee, and more particularly described as follows:

SITUATED in the Ninth (9th) Civil District of Carter County, Tennessee, and more particularly described as follows:

BEGINNING at an iron pin located on the northerly margin of River Road corner to Nancy Oliver, thence along the Oliver and Marsha Graham lines North 10 deg. 19 min. West, 681.28 feet to an iron pin; thence continuing along the line of Graham, North 10 deg. 1 min. West, 25 feet to a point located in the center of Blue Spring Branch; thence down the center of Blue Springs Branch South 77 deg. 51 min. West, 52 feet to a point; thence, continuing down Blue Springs Branch South 86 deg. 5 min. West, [illegible] feet to a point corner to Watauga River; thence along the Watauga River South 35 deg. 59 min. East, 194.85 feet to a point, corner to Tract 2 of the Murray Tract; thence along the line of Tract 2 North 77 deg. 14 min. East, 44.08 feet to an iron pin; thence continuing along the line of Tract 2 North 77 deg. 14 min. East, 200 feet to an iron pin; thence South 10 deg. 1 min. East 551.68 feet to an iron pin located in the northerly margin of River Road; thence along the northerly margin of River Road North 77 deg. 14 min. East 40.05 feet to the point of BEGINNING, containing 1.61 acres,

more or less and being identified as Tract 1, all as shown by survey of Dennis Bryan Pierce, Tennessee Registered Land Surveyor #926, which is of reference in Plat Cabinet B, Slide 61, Register's Office for Carter County, Tennessee, to which reference is made.

THERE is excepted from the above conveyance an easement for ingress, egress and utility purposes for Tracts 2 and 3 of the Murray Tract, all as shown on the plat of record in Plat Cabinet B, Slide 61, Register's Office for Carter County, Tennessee, to which reference is made.

RESTRICTIONS. The above property is subject to the following restrictions:

1. There shall be no sale of alcoholic beverages on said property;
2. There shall be no visible garbage stored or permitted on said premises;
3. There shall be no junk trucks or automobiles, or other junk equipment stored on the premises.
4. There shall be no massage parlors or related activities carried out on said premises."

REFERENCE: Being the same property which Rachel Leah Murray Pate and husband, C. Todd Pate, conveyed unto Patrick Taylor Goddard and wife, Kathy McCurry Goddard, by deed dated September 6, 1996, recorded in Deed Book 434, page 405 of the Carter County, Tennessee, Registry.

The foregoing description is the same as the description contained in the deed referenced hereinbefore.

TO HAVE AND TO HOLD unto the second parties, their heirs and assigns forever, together with all appurtenances and hereditaments thereunto attached.

First parties covenant with second parties that they are lawfully seized and possessed of the property hereby conveyed; that they have a good and lawful right to sell and convey it; that the title to the same is free and unencumbered, except for any valid restrictions or easements, if any, of record; and they further bind themselves, their heirs and representatives, to warrant and defend the title against the lawful claims of all persons whomsoever.

The taxes for 2000 shall be prorated between the first parties and the second parties as of the date of this deed.

WITNESS our hands and signatures of the day and date first above written.

Attest:

PATRICK TAYLOR GODDARD

KATHY McCURRY GODDARD

STATE OF TENNESSEE
COUNTY OF UNICOI

On this [illegible] day of [illegible] 2000, before me personally appeared PATRICK TAYLOR GODDARD and wife, KATHY McCURRY GODDARD, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

NOTARY PUBLIC

My commission expires:

[illegible] 2003

NOTICE: Failure to promptly record this instrument in the Register of Deeds Office could seriously jeopardize your rights. Preparers of this instrument have taken the legal description herein set forth from documents provided by the parties to this transaction and, therefore, no representation is made for the accuracy thereof.

FOR TAX ASSESSOR'S USE ONLY:
PARCEL IDENTIFICATION NUMBER [illegible]
ASSIGNED BY THE COUNTY ASSESSOR OF PROPERTY

PROPERTY OWNER:
Name: [illegible] Osborne and wife, [illegible] Osborne
Address: 327 Old Steele Bridge Road
Elizabethton, TN 37643
PARTY RESPONSIBLE FOR PAYMENT OF
PROPERTY TAXES: same

I, or we, hereby swear or affirm that the actual consideration for this transfer or value of the property transferred, whichever is greater, is $ 190,000.00, which amount is equal to or greater than the amount which the property transferred would command at a fair and voluntary sale.

[signature]
Affiant

Subscribed and sworn to before me this 6th day of September, 2006.

[signature]
Notary Public/Register of Deeds

My commission expires:
10-22-2003

STATE OF TENNESSEE, County of CARTER
Recorded on the 11 day of SEPTEMBER 2006 [illegible]
at 11:30 AM Book D456 Pg 784- 787
State Tax $ 703.00 Register Fee $ 1.00 Recording $ 16.00
Data Proc Fee $ 2.00 Total $ 722.00
Register of Deeds JOHNNY L. HOLDER
Deputy Register - [illegible]

2036

EXHIBIT B

# TERRY WHITEHEAD CONSTRUCTION L.L.C.

236 Price Rd. Elizabethton, Tn 37643     Phone 423-474-6364

## CONTRACT

Proposed Builder: Terry Whitehead Construction L.L.C

Owner: Mr. & Mrs. Brown Osborne

The terms of this contract are limited to construction of a residence on property owned by Mr. & Mrs. Brown Osborne located at 327 Steel Bridge Rd, Elizabethton, Tenn. Construction to be in accordance with insurance company specifications signed and dated by Owner and Builder.

Owner reserves the right at any time to submit change orders to the Builder which could increase or decrease the cost. Changes shall be reasonable and negotiated in good faith

All building material shall be supplied per insurance specifications. Owner shall carry all necessary insurance (Builder's Risk) to cover the cost of all building materials in case of loss due to fire, flood, etc. Owner will not be responsible for any injuries incurred by the builder or any subcontractors on site. Owner will not be responsible for any damage/loss of equipment owned by builder or any subcontractors on site. Builder shall supply all material and labor to construct the house as described. Work will be completed in a workmanlike manner according to standard practices and in accordance with applicable codes and regulations.

Work will be complete according to insurance Company written estimate with brick work, fireplace, heating and air units, and downstairs plumbing left open per insurance adjuster.

By signing below Owner and Builder agree with the above contract.

Owner: Brown Osborne Date 8-18-11

Owner: Elizabeth B. Osborne Date 8/18/11

Builder: Terry Whitehead Date 8-18-11

Attorneys-at-Law

Paul R. Wohlford (1940 - 2010)
Jonathan E. Roberts

November 20, 201[illegible]

State Farm Insurance
C/o: Registered Agent
One State Farm Plaza
Bloomington, IL 61710

State Farm
C/o: Sue Flowers
2500 Memorial Blvd.
Murfreesboro, TN 37131

State Farm
C/o: Trish Schiel
2500 Memorial Blvd.
Murfreesboro, TN 37131

IN RE: *BROWN AND JENNIFER OSBORNE V. STATE FARM*
CLAIM NO.: 42-6Z99-105

To Whom It May Concern:

Please let this letter serve as formal demand for payment in full for all open items in the above-referenced case. Furthermore, my client demands that any and all damage to his residence that has not satisfactorily been replaced, rebuilt, or reinstalled is demanded to be put back to the original state prior to the fire immediately. Also, please be advised that there are various open items including furniture, replacement of fixtures in the house, and replacement of structural items to the house that have yet to be paid for by the insurance policy in question. Although there has been some monies paid from State Farm to my client it is averred that these payments were not made in good faith and therefore were not consistent with the policy of insurance written and sold to my clients.

Therefore, please be advised of our intent to formally put you on notice under T.C.A. § 56-7-105 of our intent to prove a claim for bad-faith refusal to pay and ask for any and all statutory damages pursuant to the statute. Therefore, please respond to this letter immediately so that we can discuss a full and complete settlement of this case. Otherwise, if I have not heard from you within 60 days from the date of this letter I will be forced to file suit to collect any and all damages owed to my client including but not limited to actual damages, non-economic damages, punitive damages, statutory damages, attorney's fees, and all costs of this cause.



EXHIBIT D

December 3, 2013

JONATHAN E ROBERTS
WOHLFORD AND ROBERTS
ATTORNEY AT LAW
PO BOX 867
BRISTOL TN 37621-0867

State Farm Insurance
PO Box 661031
Dallas TX 75266-1031

RE Claim Number: 42-B299-105
Date of Loss: June 19, 2011
Our Insured: Brown and Jennifer Osborne

Dear Mr Roberts

In follow up to your letter of November 20, 2013 I am unsure as to what our insured, Mr. Osborne, is considering "open items." I have requested him to provide a list of his concerns in my letter dated January 10, 2013, a copy of which is enclosed. I never received detailed response so that we can properly address his concerns.

In review of our file notes, I can only speculate the following items are of concern for the building repairs:

1. Foundation - Joist are not level in some areas, sheathing left under the wall framing and some joists were not nailed properly

It is my understanding the joist that were not level and the improper nailed joist were pre-loss issues and were not damaged by the fire. The sheathing left under the wall studs is common practice in the construction industry. Please see the following policy language pertaining to the coverage of settlement of the structure and exclusions that apply:

SECTION I - LOSSES INSURED

COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED

SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below regardless of whether the loss occurs suddenly or

gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss, or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance,

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

SECTION I - LOSS SETTLEMENT

COVERAGE A - DWELLING

1. A1 - Replacement Cost Loss Settlement - Similar Construction.

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

    (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property.

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less.

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

h. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION

Next item:

2. Hot water heater - This was to be tested once power was restored. We wanted to see if it had been effected by the lightning since it was located in the garage and there was not fire or water damage in that area. It is our understanding Mr. Osborne refused the testing option and replaced the hot water heater without our option to inspect. Please refer to the following policy language:

SECTION I - CONDITIONS

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

c. as often as we reasonably require:

(1) exhibit the damaged property;

    (2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other **insured**:

(a) statements; and

(b) examinations under oath; and

(4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so, and

3. Garage doors - These were not physically damaged by the fire. Mrs. Osborne wanted them replaced because they did not match the new siding, and she didn't want them painted. Please refer to the above policy language Section I – Losses Insured, Coverage A – Dwelling.

4. Garage door openers - A request was made to have them tested once power was restored. This option was not provided by the Osborne's and was handled the same as the hot water heater.

5. Half bath on main level - Insured opted to have the shower and toilet replaced. These items were not physically damaged by the fire and, therefore, were able to be detached, reset, and cleaned. Coverage would not apply to replace. Please refer back to Section I – Losses Insured, Coverage A – Dwelling.

6. Lattice on back deck damaged by fire. This was included on the estimate.

7. Garbage disposal, window, and chandelier in the bedroom are also added to the estimate. Please refer to the enclosed copy of the estimate and highlighted items.

In regards to Coverage B - Personal Property, there are only four items on the inventory still showing as open:

1. Antique pewter cup - We need age and replacement cost to include how and where the replacement price was obtained.

2. Clothing - Need age and replacement cost for the clothing.

3. Shoes - Need age and replacement cost.

4. Jewelry - Need age and replacement quote for like kind and quality.

To date I have not received the requested information or documentation for the above items. Once proper documentation is received, those items can be updated and paid. I am not aware of other pending items such as furniture and appliances. Please see letters enclosed dated August 16, 2012, February 5, 2013 and March 28, 2013, regarding items that were previously

open and items that were upgraded. The policy pays for like kind and quality and any upgrades are the insured's responsibility. Please refer to the following policy language for settlement of Coverage B

SECTION I - LOSS SETTLEMENT

COVERAGE B - PERSONAL PROPERTY

1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability

Please advise if we have missed any other concerns that Mr. Osborne. I look forward to a resolution of concerns.

Sincerely

Trish Schick
Claim Representative
Fire Claims - Large Loss
423 282 5218
State Farm Fire and Casualty Company

24/412/1531587

Enclosure